MINUTE ENTRY
ROBY, M.J.
4/27/2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BRANDON VERRETT**                           **CIVIL ACTION**

**VERSUS**                                     **NO. 20-1035**

**PELICAN WASTE AND DEBRIS, LLC**              **SECTION: "T" (4)**

LAW CLERK:            Destinee N. Andrews
COURT REPORTER:       Nichelle Drake

Appearances:    **Carter Tilden Hastings & Lauren E. Braddy** for Plaintiffs.
                **Thomas J. Cortazzo** for Defendant.

**MINUTE ENTRY AND ORDER**

On April 27, 2021, the Court held a status conference in connection with Plaintiffs' proposed discovery requests following the Fifth Circuit decision, *Swales v. KLLM Transp. Servs.*, L.L.C., 985 F.3d 430 (5th Cir. 2021), and a hearing in this case following the same. The purpose of this status conference is to ascertain the permissible limits of preliminary discovery in accordance with *Swales*.

I.   **Background**

On March 27, 2020, Plaintiff Verrett brought this collective action pursuant to the Fair Labor Standards Act ("FLSA"), to recover unpaid wages, overtime wages, and other applicable penalties. R. Doc. 1. Plaintiff filed this action on behalf of himself and all other persons who are current and former non-exempt employees of Defendant Pelican Waste and Debris, LLC ("Pelican") who have worked as waste disposal drivers and were responsible for hauling waste and garbage to the appropriate facilities. *Id.* Plaintiff alleges, *inter alia*, that Pelican automatically deducted a thirty (30) minute lunch mealtime every workday when drivers regularly worked

**MJSTAR: 01:07**

through lunch. *Id.* Verrett also alleges that drivers were not compensated for time spent performing mandatory pre-route and post-route vehicle inspections. *Id.* In addition, Verrett alleges that his supervisor clocked him out whenever his weekly hours approached sixty (60). *Id.*

On April 20, 2020 and then again on June 5, 2020, Plaintiff moved to conditionally certify this matter as a collective action pursuant to Section 216(b) of the FLSA and for approval of a written notice to the Putative Class Members. R. Docs. 14, 24.

On March 19, 2021, the District Judge denied Plaintiff Verrett's motions for conditional certification. R. Doc. 70. In denying the motion, the District Judge noted that there were no allegations in the complaint or supporting affidavits of an element of uniformity to create a reasonable inference that an employer is directing an exercising a single, common, unlawful policy. R. Doc. 70, p. 4. The Court, therefore, found that there was no actionable claim for collective action under the FLSA. R. Doc. 70, p. 5. However, in coming to that conclusion, the District used the two-step analysis to determine whether the employees are "similarly situated" as articulated in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (1987). R. Doc. 70, p. 3. Notwithstanding, on January 12, 2021, two-months before the District Court's decision, the Fifth Circuit issued *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).

In the motion for protective order before this Court, the Defendant argues Plaintiffs' discovery requests seek a voluminous amount of information that is unrelated to whether the putative class is similarly situated in accordance with *Swales*. R. Doc. 69-1, p. 1. As such, Pelican requests that the Court issue a protective order precluding Plaintiff from taking discovery until the Court may identify the facts and legal considerations material to determining whether any potential members of the collective action in this case are similarly situated under the FLSA as required by *Swales*. R. Doc. 69-1, p. 2.

2

Plaintiffs contend that *Swales* does not prohibit class-wide discovery should it be useful to determining whether the class is similarly situated. R. Doc. 74, pp.7-8. Plaintiffs further argue that *Swales* does not explicitly prohibit merits-based discovery; thus, it should be allowed where Pelican in this case received the opportunity to conduct some merits-based discovery. R. Doc. 74, p. 8.

After the motion for protective order was filed, on March 23, 2021, Plaintiffs filed a Motion for Reconsideration requesting that they be allowed to conduct class-wide discovery and resubmit the motion for conditional certification using "all available evidence" pertinent to the FLSA's similarly-situated standard under the single-stage analysis mandated by the Fifth Circuit's recent decision in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021). R. Doc. 71. In that motion, the Plaintiffs noted the District Court's reliance on a lack of evidence as to why the timecards where not corrected in its order denying the motion for certifications. R. Doc. 71-1, p. 7.

Plaintiffs contend the failure of the District Court to allow Plaintiffs some preliminary discovery, especially where Defendant has already conducted and received individualized discovery, does not comport with the benefit of "all available evidence" standard set forth in *Swales*. *Id.* In addition, Plaintiff Verrett details a list of at least twelve (12) possible preliminary discovery requests he argues are necessary to determine how similarly situated is the putative class. R. Doc. 71-1, pp. 7-8. As such, the Plaintiffs request that the Court authorize preliminary class-wide discovery and that he may be allowed to resubmit his motion for certification within thirty-days following the close of preliminary class-wide discovery. R. Doc. 71-1, p. 2.

While there were at one point six members of the putative class, four plaintiffs have since withdrawn their consent forms. As such, only two members of the putative class remain. Therefore,

the remaining Plaintiffs to this action are Brandon Verrett, putative class representative; Alvin Coleman, Jr., opt-in Plaintiff; and Sandra Green, opt-in Plaintiff.

On April 7, 2021, the Court held a hearing on the motion for protective order. R. Doc. 89. In that hearing, the Court granted that Defendant's motion for protective order. *Id.* The Court, however, permitted Plaintiffs the take a second bite of the proverbial apple. *Id.* The Court, accordingly, ordered Plaintiffs to redraft their discovery requests and narrow their requests to only those necessary within the bounds of preliminary discovery as contemplated in *Swales*. *Id.* The Court further noted that while some merits-based discovery could be permissible, the discovery requests must be limited to those preliminary questions addressing commonality. *Id.* The Court also instructed the parties to submit briefs that provide: at least three case examples of where *Lusardi* does not permit class certification discovery at the stage one, one FLSA case that involves scope of discovery for waste truck drivers, and one case that involves waste truck drivers' GPS tracking records. The Court now reviews those proposed discovery requests in light of *Swales*.

## II.     **Discovery Permissible under *Swales***

The Court first addressed in the status conference whether *Lusardi* permits some discovery at stage one. It has been Defendants' position all along that Plaintiffs could have propounded discovery prior to conditional certification under the *Lusardi* standard. Plaintiffs now too concede that they had the option of conducting some class-wide discovery, but district courts in this circuit have "penalized" such.

The Defendants continue to advance that Plaintiffs have forfeited their opportunity to conduct discovery regardless of which standard is used, which is disputed by Plaintiffs based upon the inconsistent approaches that courts utilized in trying to comply with *Lusardi*. Here, the Court is of the opinion that the uncertainty as to the the amount of discovery permissible before *Swales*

4

was the one of reason the Fifth Circuit rejected the *Lusardi* approach and adopted the *Swales* standard. The Defendant's position on the amount and type of discovery permissible under the *Lusardi* standard, therefore, is a red herring that detracts the Court from the heart of the matter. No matter what *Lusardi* stated or permitted, in January *Lusardi* is was explicitly rejected by the Fifth Circuit. *Swales* is the controlling law and *Swales* permits some preliminary discovery.

Plaintiff argues that the putative class is similarly situated in that Defendants instituted a *de facto* policy to ensure that waste disposal truck drivers neither recorded nor were compensated for missed meal breaks. Defendants argue that this Court has already rejected this theory where the employer had a policy specific to correcting the timecards subject to the auto-deduction of 30-minute meal breaks. *See Piazza v. Associated Wholesale Grocers Inc.*, No. CV 17-10289, 2018 WL 3708682, at *1 (Milazzo, D.J.) (E.D. La. Aug. 3, 2018).

In *Piazza*, which was decided under the old *Lusardi* standard, the Court denied the plaintiff's motion for conditional certification noting that plaintiffs "fail[ed] to show that the putative class members were together the victims of a single policy or plan that was unlawful." *Id.* at *4. In coming to this decision, the Court had the benefit of some evidence, obviously obtained through discovery procedures, to include: the employee handbook, the declaration of an employee working in human resources, and the form that employees were to fill out and submit to their supervisor to correct the timekeeping system. *Id.*, *in passim*.

The *Piazza* Court further noted that the declarations that the "[p]laintiff submits say nothing about why the declarants did not have their time properly recorded." *Id.*, at *4. The Court further noted the [p]laintiff must present some evidence that the potential class members are similarly situated with respect to why their time was not corrected." *Id.*

5

In this case, Plaintiff submitted a declaration by Verrett stating when he was hired he did not remember receiving a company handbook, he had never heard of any timecard correction procedure, when he complained about working through meal breaks without pay to his supervisor no timecard correction procedure was ever mentioned as a possible remedy, and that his employer never gave him the opportunity to review his time record in order to review and approve them as accurate. In addition, Verrett declares several other coworkers complained and similarly were never told about a timecard correction procedure.

Given Verrett's declaration on the timecard correction procedure and that *Piazza*, decided under the *Lusardi* standard, had the benefit of some discovery, the Court finds that some discovery is permissible to address the commonality of claims and specifically the *de facto* policy. Here, the Court notes that Defendant tries to relate this as a document recordation case under the *Piazza* umbrella. This Court does not see it as such where after much discussion it is unclear whether the overtime requests were ever even documented or forms such as those utilized in *Piazza* were used but rather an instant credibility call was made by the supervisors.

The Court here directs the litigants' attention to *Miller v. MV Transportation, Inc.*, 331 F.R.D. 104, 112 (W.D. Tex. 2019). In *Miller*, the District Court approved a motion for conditional certification even though the employer had a correction procedure for its auto-deduction policy during meal break times. In doing so, the *Miller* court noted the existence of a *de facto* policy "presented with allegations that supervisors are in practice discouraging employees from correcting their time records or wrongfully refusing to correct employees' time records." *Id.* Some of the evidence used to make this decision included the frequency of complaints from the drivers. *Id.* The Court, however, noted that evidence from potential opt-in members was unnecessary at this stage. *Id.*

The preliminary discovery in this case, may or may not change the disposition of the motion for certification. That it not for this Court to determine, however. At this point, the Court is ensuring that the Court has all relevant facts and information to make a thoughtful decision under the new *Swales* standard. Therefore, based on these considerations and law, the Court finds the Plaintiffs shall, therefore, be permitted to conduct some preliminary discovery.

Again, however, that discovery must be limited to "the material facts and legal conclusions necessary to determine whether a group of employees are similarly situated." *Hebert v. Technipfmc USA, Inc.*, No. 4:20-CV-2059, 2021 WL 1137256, at *2, 5 (S.D. Tex. Feb. 5, 2021) (citing *Swales*) (explaining similarity can be shown through employees' job duties, responsibilities, and work schedule); see also *Rogers v. 12291 CBW, LLC*, No. 1:19-CV-00266-MJT, 2021 WL 1156629, at *2 (E.D. Tex. Mar. 15, 2021) (stating topics such as number of employees, dancer classification, job duties, job sites, pay structure, work schedules, work policies and procedures, management structure, hiring structure, work contracts, and arbitration agreements was relevant to question of similarly situatedness). The Court, after reviewing the proposed discovery requests submitted by Plaintiffs, makes the following rulings.

### i. *Individualized Discovery*

The Court at this time will limit individualized discovery to those three plaintiffs still enrolled in the case. If Plaintiffs can make a showing that they are similarly situated than it may be permissible to expand the scope of individualized discovery beyond themselves and to others. Until such time, however, the Court finds it premature.

### ii. *Temporal Scope*

Next, the Court determines the temporal scope of the requests. Currently, Plaintiffs are seeking information from March 27, 2020 to March 27, 2017. Plaintiffs state that they believe this

is an appropriate temporal period because it contemplates the three-year look-back period articulated in the FLSA. Plaintiffs also suggest that at some point they will seek tolling of that period.

Again, the Court stresses the bounds of preliminary discovery. At this stage, the Court is simply allowing discovery to show that the Plaintiffs are similarly situated and should be allowed to proceed forth as a collective. The Court, therefore, shapes the temporal scope around the Plaintiffs currently enrolled in this matter. At the status conference, it was determined Verrett worked from April 27, 2018 to November 2, 2018 as well as January 15, 2019 to April 10, 2019; Coleman worked October 18, 2019 to February 19, 2020; and Green worked October 10, 2017 to October 30, 2017. Keeping these dates in mind the Court finds a more appropriate temporal scope would then be October 2017 to February 2020.

### iii. *GPS Documentation*

The Court then addresses whether discovery should be allowed beyond the timecard deduction policy. Specifically, the Court addresses the GPS records. The Plaintiff contends that the GPS records are necessary to show which drivers would qualify to be included in the putative class.

At this stage, the Court finds the GPS records are simply unnecessary. Plaintiffs cited *Espenscheid v. DirectSat USA, LLC*, No. 09-CV-625-BBC, 2011 WL 10069108, at *31 (W.D. Wis. Apr. 11, 2011) for the proposition that GPs records are relevant. *Espenscheid*, however, was decide on a motion for summary judgment. While Plaintiffs argue that the GPS records are necessary to show Defendants' constructive knowledge that drivers were working through their 30-minute lunch period, the Plaintiff's complaints to their supervisors should establish direct knowledge. Retrieving and producing GPS records is expensive, time consuming, and document

intensive. While this information may be relevant, because the other evidence has established the same, the Court considers such information not necessary at the preliminary discovery stage.

### iv. Supervisor Training

The Court notes that upon review of plaintiff's proposed requests many seemed pointed toward what actions employer-Defendant undertook to ensure that timecards were corrected and accurate. This is not relevant to the *de facto* policy analysis, which requires a showing that employer Defendant actively discouraged employees from correcting their time records or wrongfully refused to correct employees' time records. *Miller*, 331 F.R.D. at 112. The Court, therefore, denies the request for extensive discovery into supervisor training at this time.

### v. Timecard Correction Policy / Overtime Procedures

Based on the District Judge's ruling in this matter and relevant case law, e.g., *Miller*, 331 F.R.D. 104, the Court finds the timecard correction policy and processes for approving time records of utmost importance. It seems of all the information discoverable in this case, this type of information will be most relevant to the District Judge's decision on certification.

### vi. Permissible Requests

The Court notes in crafting appropriate topics it reviewed the timecard correction policy appended to the motion for summary judgment on the record. *See* R. Doc. 31-1, p. 10. The Court notes on cursory review the policy does not specify the type of notification to correct timecard corrections (e.g., verbal, email, form, text, etc.) and that the procedure is highly discretionary, giving all authority to the supervisors without speaking to the exact authority given to the supervisors. In fact, at the status conference, Plaintiffs stated in order to have their time adjusted they would call from their personal cell phones and make requests orally to their supervisors. It is

unclear at this point how the supervisors handled the request. Much is left to the unknown on this policy, its implementation, and its documentation.

Therefore, after discussing with the parties about the discovery requests and the current status of the case, the Court finds the following sort of information would be discoverable:

- The timecard correction procedure and policy.
- Timekeeping procedures—both electronic and paper timecards.
- How employees were to report overtime or timecard errors to their supervisors?
- How did supervisors go forth approving or denying request for overtime compensation?
- How were requests for timecard correction documented?
- How complaints of under-compensation were documented by supervisors?
- Did all three Plaintiffs have the same supervisor?
- The appeals mechanism for denied time adjustment requests.
- Approved timecard correction requests.
- Any requests for timecard adjustments by the three Plaintiffs.

While this list is in no way exclusive, the discovery requests should fit this pattern.

The Court finally notes while many of the proposed requests are overbroad as not narrowed to whether Plaintiffs are similarly situated at this preliminary discovery stage, that post-certification these requests may prove more pertinent.

The Plaintiffs are ordered to redraft their proposed discovery requests as modified in this order.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiffs shall redraft their discovery requests consistent with this opinion and send it to the Defendant **no later than Monday, May 10, 2021**.

New Orleans, Louisiana, this 3rd day of May 2021.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**